[S. F. No. 1589.    In Bank.    March 2, 1899.]

THE PEOPLE ex rel. THOMAS CUFF, Appellant, v. CITY OF OAKLAND, Respondent.

Municipal Corporations—Annexation to City—Sanitary Districts.— Sanitary districts, though public corporations, are not organized under the municipal incorporation act, and may be annexed to an incorporated city, under the act of 1889 (Stats. 1889, p. 358), without necessity of "consolidation" of the corporations under section 8 of the municipal government act of 1883.

Id.—Effect of Annexation—Cessation of Powers of Sanitary District. A sanitary district being an inferior corporation to that of a city which is capable of exercising the same and other functions, its annexation to the city under the statute involves a cession of the powers of the inferior corporation to the greater, and a consequent dissolution of the sanitary district as the result of the annexation.

Id.—Division of District—Dissolution.—Where part of a sanitary district is annexed to a city, and part of it is not annexed, the consequent dissolution of the district cannot render the annexation unlawful, but the property of the district is to be disposed of as indicated by section 21 of the act under which sanitary districts are organized. (Stats. 1891, p. 223.)

Id.—Annexation to Ward of City.—A sanitary district annexed to a city, which by its charter is limited to a specified number of wards, may be assigned to the ward of the city which is contiguous to the territory annexed.

Id.—Constitutional Law—Control of "Municipal Affairs."—The provision of section 6 of article XI of the constitution, as amended in 1896, exempting the control of "municipal affairs" from the operation of general laws, does not operate to prevent the annexation of territory to a municipal corporation under the provisions of an act of the legislature, with the consent of the municipal corporation.

Id.—Change of City Charter.—The annexation of territory to a municipal corporation does not effect a change of the city charter within the inhibition of section 8 of article XI of the constitution.

Id.—Proceedings for Annexation—Jurisdiction of Council—Sufficiency of Petition—Description.—The sufficiency of the petition presented for annexation of territory to a city must first be passed upon by the municipal council, and if the council concludes that it is sufficient in its description of the territory to be annexed, an error in the exercise of the jurisdiction cannot affect the validity of the proceedings.

Id.—Change of Petition—Addition of Territory—Submission to Voters.—Where a second petition was presented before final action taken by the council upon the first, including additional territory, but not excluding any inhabitant of the territory described in the first petition, it is not necessary to submit both of the petitions to a vote of the electors, but only the second petition need be so submitted.

APPEAL form a judgment of the Superior Court of Alameda County and from an order denying a new trial. S. P. Hall, Judge.

The facts are stated in the opinion.

W. F. Fitzgerald, and Fitzgerald & Abbott, for Appellant.

W. A. Dow, City Attorney, for Respondent.

HAYNES, C.—The purpose for which this action is prosecuted is to determine the validity of certain proceedings under which the defendant claims that certain territory lying between the northerly charter line of said city and the southerly line of the town of Berkeley has been annexed to it, and that said territory is now a part of said city. Findings were filed and judgment entered in favor of the defendant, and the plain-

tiff appeals from the judgment and from an order denying a new trial.

There is no controversy as to the facts. Nearly all were stipulated, and are incorporated in the findings; nor is it questioned that the requirements of the statute under which the proceedings were taken, were complied with, but, upon the grounds hereinafter stated, appellant contends that said proceedings were unauthorized and void, and that the judgment affirming that the annexation of said territory was accomplished thereby should be reversed.

1. The annexed territory includes the whole of Adeline sanitary district and part of Golden Gate sanitary district; and appellant contends that sanitary districts cannot be annexed to an incorporated town or city under the act of 1889 (Stats. 1889, p. 358), under which the proceedings in question were had.

This contention is based upon the proposition that two public corporations cannot exist in the same territory when the powers conferred upon each conflict one with the other, and that the powers conferred upon each do conflict; that a sanitary district cannot be dissolved by annexation proceedings under the act of 1889, but only in the special way provided by the sanitary act under which they were organized (Stats. 1891, p. 223), and if they can be annexed to the city it must be under the statute providing for the consolidation of municipal corporations.

It may be conceded at the outset that sanitary districts are public corporations, though not designated as corporations by the statute, and that all their powers, duties, and privileges are such as are incident to municipal corporations formed under the municipal government act, or existing under freeholders' charters, though not possessing many of the important powers, duties, and privileges of the latter, and that the same powers could not, after annexation, be exercised by each in the same territory. But if the statute permits territory embraced in or covered by a sanitary district to be annexed to a city—a municipal corporation of a higher class and capable of exercising the same functions as well as others essential to municipal government—such statute contemplates, *ex necessitate rei*, a cession of the powers of the inferior corporation to the greater, and

a consequent dissolution of the former as a result of the annexation. If the territory embraced in these sanitary districts had chosen to incorporate under the statute as a town or city instead of becoming annexed to the city of Oakland, it certainly could not have been necessary as a preliminary to such incorporation to disincorporate as such sanitary districts, since by the incorporation they would have preserved every right and privilege they had before, and would at the same time acquire other rights and additional powers which would enable them the better to preserve and secure all the rights they had as sanitary districts; and if they might incorporate as a town or city without first dissolving the prior corporation, no reason is perceived why they could not accomplish the same thing by becoming annexed to an existing municipal corporation, under the act of 1889, which provides: "The boundaries of any incorporated town or city, whether heretofore or hereafter formed, incorporated, organized, or reorganized, may be altered, and new territory annexed thereto and incorporated and included therein, and made part thereof, upon proceedings being had and taken as in this act provided. . . . . No territory, which at the time such petition for such proposed annexation is presented to such legislative body forms any part of any incorporated town or city, shall be annexed under the provisions of this act."

This statute unquestionably authorized the annexation of the territory here in question, unless appellant's further contention can be sustained, viz., that these districts were municipal corporations, and the proceedings to accomplish the union of this territory with the city of Oakland should have been taken under section 8 of the act of 1883. (Stats. 1883, p. 97.)

That act is commonly known as the "municipal government act," which classifies the different municipal corporations according to population, and provides a charter for each class, as required by the constitution, and section 8 provides for the "consolidation" of contiguous municipal corporations. But it must be apparent that the municipal corporations there intended were those, or such as those, which might be organized under that act, or existed under special charters granted by the legislature under the former constitution, or under charters permitted to be framed under the new constitution, and which

were designated as towns and cities. As sanitary districts could not be formed under the municipal government act, it would seem to be clear that they could not be consolidated with a city or town under its provisions; and as any "territory" may be annexed to a town or city to which it is contiguous, unless it is part of an "incorporated town or city," territory embraced in a sanitary district may be annexed.

It is also suggested that difficulties may arise out of the division of Golden Gate sanitary district, a part of which is not annexed. That district, as such, is not a party to this proceeding, nor is any fact stated in the record showing that a controversy will arise; and no question of that character can be pertinent here unless it tends to show that a division of the district by the annexation of part of it is contrary to law, and that therefore the annexation of such part is not accomplished. It is sufficient to say that section 21 of the act under which these districts were organized, which provides for their dissolution, would seem to be comprehensive enough to point the way to the adjustment of all controversies that may be reasonably anticipated, and that the anticipation of controversies that may be thus adjusted cannot make the annexation unlawful. Said section, however, provides that if there be any outstanding bonded indebtedness, the vote to dissolve such district shall dissolve the same for all purposes excepting only the levy and collection of taxes for the payment of such indebtedness. It also contains the following provision: "Upon such dissolution the property of the district shall vest in any incorporated city or town that may at said time be in occupation of a considerable portion of the territory of the district, and if there be no such incorporated city or town, then the property shall be vested in the board of supervisors of the county until the formation of such a city or town." These provisions would seem to make it clear that there are no legal obstacles to the annexation, either of such districts, or parts thereof, to an incorporated city, and no other question is here considered or decided.

2. Appellant's second point is: "There is no law under which to add the annexed territory to any wards, so as to enable the duly qualified electors residing in the annexed territory to use the elective franchise to which they are entitled under the constitution."

Section 25 of the charter of the city of Oakland provides: "The council shall in the year 1890, and every tenth year thereafter, redistrict the city into seven wards, making the same as nearly equal in population and as geographically compact as possible; but the city shall not be redistricted within ninety days previous to any municipal election." (Stats. 1889, p. 524.)

Section 2 of the act of 1889, under which the territory here in question was annexed, provides: "The legislative body of any incorporated town or city which is or shall be divided into wards, and to which territory has been or shall be hereafter annexed, must by ordinance either so alter the boundaries of the wards of such municipal corporation as to include such annexed territory in one or more wards adjoining such annexed territory, or make of such annexed territory one or more additional wards; provided, that the number of wards shall not be so increased as to exceed the number which such municipal corporation may according to law have.  In altering the boundaries of wards, or creating new wards, regard must be had to the number of inhabitants, so that each ward shall contain, as near as may be, an equal number of inhabitants, exclusive of persons incapable of citizenship in this State."

The agreed statement of facts on this point is, in substance, that the said new territory adjoined the second ward of said city, and no other; that on September 20, 1897, the council adopted an ordinance altering the boundaries of the second ward so as to include the annexed territory; that it was approved on September 28th, and has ever since been in full force and effect.

Appellant's argument is that section 2 of the act of 1889, above quoted, conflicts with said section 25 of the charter, and that under section 6 of article XI of the constitution, as amended in 1896, the charter provision must control.  Said constitutional provision, so far as material, is as follows: "Cities and towns heretofore or hereafter organized, and all charters thereof framed or adopted by authority of this constitution, *except in municipal affairs,* shall be subject to and controlled by general laws."

The words in italics constitute the amendment to said section; and appellant's contention seems to be that the city had no power to change the boundaries of any of its wards, except at the times

and in the manner specified in said section of its charter, and that as said section 2 of the act of 1889 relates to municipal affairs the city cannot avail itself of its provisions to change the boundaries of a ward, or be in any manner controlled by it.

I do not perceive any ground upon which it can be said that the act providing for the annexation of territory to an incorporated town or city is obnoxious to said section of the constitution as amended. It permits territory not within the city limits or under its control to become annexed to and incorporated with the city by the mutual action of the city and the inhabitants of such territory—a thing that could not be accomplished through any provision of the charter of the city of Oakland, or otherwise than under the statutory authority given by said act; and therefore such relation as said act has to "municipal affairs" is not within the constitutional exception. It does not compel action contrary to the provisions of the city charter, but authorizes action, at the pleasure of the city, which could not otherwise be taken. As the legislature alone has the power to authorize such annexation, it must have the power to prescribe the terms, conditions, and mode of annexation, and especially to provide that the inhabitants of the annexed territory shall not be deprived of any constitutional right, and it is therefore enacted that the boundary of the adjacent ward or wards shall be changed so as to include the added territory, or that it shall be made into one or more wards, if thereby the number of wards to which the city is restricted shall not be exceeded. As the city of Oakland is limited to seven wards by its charter, the annexed territory was properly added to the second ward. This I think could be done without a violation of its charter. Section 25 of the charter, while requiring that the city shall be redistricted into seven wards every tenth year, does not prohibit a change of boundaries at other times (unless within ninety days previous to a municipal election), and therefore the electors residing within the added territory were not deprived of the right to exercise the elective franchise, and the annexation cannot be declared void upon that ground. Whether the city should at that time have been redistricted into seven wards of as nearly equal population as possible is not a question affecting the validity of the annexation, and need not be considered. Appellant's contention that the voters

of the annexed territory could not participate in the election of city officers is not sustained. What has been said also disposes of appellant's third point.

4. Appellant's fourth point is: "The annexation is void because section 1 of the act of 1889 is unconstitutional when considered in connection with section 8 of article XI of the constitution."

Appellant's argument is, that the charter of the city of Oakland (commonly known as a freeholders' charter), framed and adopted under the provisions of said section of the constitution, can only be amended at intervals of two years, and in the manner in said section provided, which includes the approval of such amendment by the legislature; and that the effect of annexing new territory is an amendment of the charter in a mode which does not conform to the constitution, since a description of the territory covered by the charter is an essential part of it; and cites *People v. Oakland,* 92 Cal. 611.

This contention is conclusively answered by the case of *People v. Coronado,* 100 Cal. 571. There the city of San Diego had a freeholders' charter also, and the charter included the city of Coronado within its boundaries. Proceedings were taken under the act of March 19, 1889 (Stats. 1889, p. 356), to exclude the city of Coronado. It was there contended, as here, that the exclusion, if effectual, constituted an amendment to the city charter. It was held that said act of 1889 authorizing the change of boundaries was constitutional and applied to cities having a freeholders' charter. The case of *People v. Oakland, supra,* was there noticed and shown not to be in point.

5. Lastly, it is contended that the city council had no jurisdiction to act on the petition under which the annexation proceedings were had.

The petition under which the proceedings to annex the new territory were had was presented to the city council on April 19th. On March 9th the council received a petition to annex certain territory therein described, but which was different from that described in the second petition. Said first petition was on March 22d referred by the council to the ordinance and judiciary committee, which consisted of five members; that the relator herein, and other residents and property owners within the

territory sought to be annexed, filed with the council a protest against said petition first presented,. and alleged, as the ground of such protest, "that the description of the new territory asked to be annexed is incorrect and. cannot be located, and that said petition does not conform to the law and "is void." On April 19th the said committee reported in writing to the council recommending that no action be taken on said petition first presented, which report was received by said council and filed, and on the same day the second petition, under which said territory was annexed to the city, was presented. Touching said first petition the court below found that the description of the territory sought to be annexed thereunder was sufficient to identify it, and was sufficient for the purpose of annexation proceedings.

It is contended by appellant that "section 1 of the act of 1889 (Stats. 1889, p. 358), makes it mandatory upon the council, upon receiving a written petition containing the requirements of the statute, to submit, 'without delay,' to the electors of the municipal corporation, and to the electors of the district proposed to be annexed, the question whether the new territory should be annexed."

. But it is clear that the sufficiency of a petition presented for such purpose must first be passed upon by the council before an election is ordered. The protest against said. petition, abovementioned, will illustrate this proposition, viz., that the description of the territory proposed to be annexed "is incorrect and cannot be located." If that were true the council could neither determine who, outside of the city, should be entitled to vote upon the question of annexation, nor whether a majority of those actually voting upon the question of annexation were entitled to vote; and if the council should come to the conclusion that the boundaries were uncertain, or could not be ascertained, it would certainly be their duty not to submit the uncertain proposition to an uncertain and indefinite body of voters. Having jurisdiction to pass upon that question, it is immaterial whether the council erred upon the question of its sufficiency. But, however that may be, the second petition embraced all the territory described in the first, and additional territory not, described in the first. It was presented before final action was taken by the council upon the first, and, as no one who was included in the

first petition as a resident of the territory proposed to be annexed was excluded by the second, it could not be necessary to submit both to a vote of the electors. No one could be injured by the failure to submit the first to a vote, since every one affected by the first and entitled to vote thereon was entitled to vote upon the second.

No other questions are discussed or require consideration.

I advise that the judgment and order appealed from be affirmed.

Gray, C., and Pringle, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.

Garoutte, J., Harrison, J., McFarland, J., Henshaw, J.

BEATTY, C. J., concurring.—I concur in the judgment and in the opinion of the court, with this exception: I do not think the constitutional amendment of 1896 affects the construction or validity of the annexation act of 1889, or in anywise limits its operation upon the Oakland charter. In other words, I do not think it has any retroactive operation. Under numerous decisions of this court the annexation act of 1889, as a general law, controlled all charters at the time it was passed, and the subsequent adoption of the amendment of 1896 did not have the effect of undoing what was then fully accomplished.