[S. F. No. 5158.  Department Two.—December 24, 1909.]

## ALVA B. CLUTE et al., Appellants, v. E. Q. TURNER, as Superintendent of Streets of the Town of Berkeley (a Municipal Corporation), et al., Respondents.

STREET IMPROVEMENT ACT OF 1889—CONSTITUTIONAL LAW—GENERAL LAW—UNIFORMITY OF OPERATION—TITLE.—The act of 1889 entitled "An act to provide for laying out, opening, extending, widening, straightening or closing up, in whole or in part, any street, square, lane, alley, court, or place within municipalities, and to condemn and acquire any and all land and property necessary or convenient for that purpose," (Stats. 1889, p. 70), is not unconstitutional either because it is not a general law, or because it is not uniform in its operation, or because the subject of assessment upon which it legislates is not expressed in its title.

ID.—ACT IS UNIFORM IN ITS OPERATION.—The class to which the act applies, to wit, municipal corporations, is a well recognized class to which general legislation of the character mentioned in the title of the act may be addressed, and the subject of that legislation is one usually committed to such municipalities, either by charter or general laws, as matter of municipal concern, and a law which provides for all municipalities a system for opening and extending streets and kindred matters, such as are embraced in the title of the act, is uniform in its operation.

ID.—EMINENT DOMAIN—POWER OF TAXATION.—The provisions of the act, so far as they pertain to the assessment of the lands in the district for special benefits, have no relation to the exercise of the power of eminent domain, but are sustainable as an exercise by the municipality of the power of taxation conferred upon it by the state as a governmental agent.

ID.—MUNICIPALITY MAY TAX FOR LOCAL IMPROVEMENT.—The legislature has the right, under the power of taxation, to confer upon municipalities the authority to require local improvements, such as the laying out or widening of streets, to be borne by those owning property

in the vicinity of the improvement, and who are specially benefited by reason of it. Such exercise of the taxing power does not contravene the constitutional provision respecting the exercise of the power of eminent domain.

Id.—Act not Local or Special.—An act which confers authority upon municipalities to tax for local improvements cannot be said to be local or special when compared with legislation providing for the exercise of the right of eminent domain, where the act has no relation to the exercise of such latter power, but applies to and is justified under the exercise of the entirely different and distinct power of taxation.

Id.—Equal Protection of the Laws.—The provisions of the act for the assessment of lands in the district for special benefits do not deny the person whose property is assessed the equal protection of the law guaranteed him by the fourteenth amendment of the federal constitution.

Id.—Act not Repealed by Subsequent Legislation.—The act of 1889 was not repealed by the act of 1903 (Stats. 1903, p. 376), on the same subject of opening and laying out streets. The latter act merely provides an alternative method of procedure, and by section 35 thereof expressly declares that its provisions shall in no way affect the act of 1889. Nor was it repealed by the amendments of 1907 to the Code of Civil Procedure relative to eminent domain.

APPEAL from a judgment of the Superior Court of Alameda County. William H. Waste, Judge.

The facts are stated in the opinion of the court.

J. C. Bates, for Appellants.

Redmond C. Staats, James M. Koford, George L. Hughes, and F. D. Stringham, for Respondents.

LORIGAN, J.—The trustees of the town of Berkeley instituted proceedings under the act of 1889 to open and extend Eighth Street in that town. The lands of plaintiffs were included within the district established by the board, under the act, as among those to be benefited or affected by the opening of the street, and which were to be assessed to pay the damages, costs, and expenses thereof. In due course an assessment was levied against the lands of plaintiffs and others by the commissioners appointed by the board of trustees for that purpose, for benefits to their lands by reason of the opening of the street. The assessment against the lands

of plaintiffs having become delinquent, the superintendent of streets was proceeding to sell their lands within said district to collect it, when they brought this action against the superintendent and the board of trustees of the town, to obtain an injunction restraining the sale, and a decree declaring the assessment invalid.

A demurrer to the complaint was sustained, and a motion of plaintiffs for a preliminary injunction denied. The plaintiffs, declining to amend their complaint, judgment was entered against them and they appeal therefrom and from the order denying their motion, the principal question on the appeal being the correctness of the ruling of the court sustaining the demurrer to the complaint.

We have not set forth in particular the allegations of the complaint because the action is not based on any claim of invalidity in any of the proceedings taken by the board of trustees for non-conformity to the provisions of the act under which they were instituted. Their regularity is practically conceded, and the attack on the assessment is made exclusively upon the ground that the, act itself, under which the proceedings for opening the street were brought, is invalid because violative of certain provisions of both the state and federal constitutions, and, if not invalid for those reasons, that the act had, nevertheless, been repealed before the proceedings in question were instituted.

As to the constitutional objections, it is claimed that the act in question is void under sections 11 and 14 of article I of our constitution, providing, respectively, that all laws of a general nature shall have a uniform operation, and that private property shall not be taken or damaged for public use without just compensation having been first paid to the owner; that the act is not a general law, particularly when compared with the general act of eminent domain; and that it also conflicts with section 24 of article IV of the same organic law, which requires the subject of an act to be expressed in its title, the point in this regard being that the subject of "assessment," to pay for the lands taken for the opening of the street, is not mentioned in the title to the act. As to the federal constitution it is claimed that the act denies to plaintiffs "the equal protection of the laws" guaranteed to them by article XIV of that constitution.

Upon the subject of repeal of the act, it is insisted that it was repealed by the passage of the subsequent act of 1903 (Stats. 1903, p. 376), on the same subject of opening and laying out streets, and also by the amendment in 1907 of section 1238 of the Code of Civil Procedure, relative to the exercise of the right of eminent domain as to roads and streets.

The constitutionality of this particular act of 1889 has repeatedly been attacked under constitutional objections, and as repeatedly sustained, and in the present assault, where an objection is now urged, which it is claimed has not been heretofore made against the act itself, it will be found to have been urged against legislation of a similar character and determined to be untenable.

The act in question is entitled "An act to provide for laying out, opening, extending, widening, straightening or closing up, in whole or in part, any street, square, lane, alley, court or place within municipalities, and to condemn and acquire any and all land and property necessary or convenient for that purpose." (Stats. 1889, p. 70.)

The act provides a complete scheme for carrying out the purposes stated in its title, and, among other things (alone necessary to be referred to in connection with the points made on this appeal), provides for the passage of a resolution of intention, describing the work or improvement to be carried out, the land necessary to be taken therefor and a specification of the exterior boundaries of the district of land to be affected or benefited by said work or improvement and to be assessed to pay the damages, costs, and expenses thereof; that commissioners shall be appointed to determine the value of the land to be taken and the damages to improvements and property affected thereby; the said commissioners also to determine the amount of expenses incident to the work or improvement contemplated, and to assess the same upon the district of lands declared to be benefited thereby, in proportion to the benefits to be derived therefrom; it provides for a report of these matters by the commissioners to the municipal body, and for public notice of the making thereof, and for a hearing thereon, at which objections to said report may be made by any person interested; it empowers the commissioners' after confirmation of the report to collect the assessments made, and authorizes the sale of the lands assessed

for benefits after payment of the assessments becomes delinquent; it further provides that when sufficient money is in the hands of the city treasurer in the fund devoted to the proposed improvement, to pay for the lands and improvements to be taken or damaged, that the owner of said land be notified of the readiness of the municipality to make payment on tender of a conveyance by him, and, in the event of his refusal to accept, provides that the commissioners may cause proceedings, in the name of the municipality, to be taken for the condemnation of the land, as provided by law, under the right of eminent domain.

Now, to a consideration of the points urged by appellants against the act.

It is claimed that the act is unconstitutional, because it is not a general law; that it is not uniform in its operation, and that the subject upon which it legislates—the assessment —is not expressed in its title.

As to the first point referred to, it has been expressly decided adversely to appellant in *Davies* v. *Los Angeles*, 86 Cal. 37, [24 Pac. 771], which involved a consideration of this very act of 1889. It was there insisted that the act was not a general law within the constitutional provision. But the court held to the contrary, saying: "The only question upon which there could be any reasonable doubt is whether the statute under consideration is a general law or not, and that question has been firmly settled by several well considered cases, above cited, and should be equally beyond controversy in the courts of this state."

The constitutionality of the act was again sustained in *Cohen* v. *County of Alameda*, 124 Cal. 504, [57 Pac. 377], and in *Alameda* v. *Cohen*, 133 Cal. 5, [65 Pac. 127], both following the Davies case.

As to the point that the act is unconstitutional because the subject of assessment is not mentioned in the title, this point was particularly discussed in the Davies case, and expressly decided to be untenable.

It is insisted, however, that conceding the act to be a general law, it is not uniform in its operation. But upon the face of the act, at least, there can be no merit in this claim. "If the law operates equally upon all the objects embraced within it, when they come within the circle or scope of its

authority, the uniformity of operation contemplated by the constitution is attained." (*People* v. *Henshaw,* 76 Cal. 436, [18 Pac. 413].) The class to which the act applies is a well-recognized class, to which general legislation of the character mentioned in the title of the act may be addressed,—namely, municipalities, and the subject of that legislation, the laying out and opening of streets and other public places, is one usually committed to such municipalities, either by charter or general laws, as matter of municipal concern, and a law which provides for all municipalities a system for opening and extending streets and kindred matters, such as are embraced in the title to the act, is uniform in its operation. (*Hellman* v. *Shoulter,* 114 Cal. 136, [44 Pac. 915, 45 Pac. 1057].)

But it is claimed, notwithstanding these decisions, that the act is not a general law, but local and special, when compared with the provisions of the Code of Civil Procedure relative to the exercise of the right of eminent domain. The particular claim in that respect is, that the provisions relative to eminent domain constitute a general law in the fullest acceptation of the term, and apply to all cases where private property may be taken or damaged for public use, including the matter of opening and extending streets, while the act in question is special and local in its application and directed, as counsel contends, to the taking of private property for public use in municipalities only. In this connection it is further insisted that by the proceedings authorized under the act a person is deprived of his property without due process of law, or the protection of equal laws in this, that the taking of private property for opening the streets in a municipality is segregated from the taking of such property outside the municipality, and of all other property, without the benefit conferred in all other cases under proceedings in eminent domain, of having a judicial determination in an action brought for that purpose of the compensation to be paid for the taking with the right of appeal, and also subjecting the owner of property so taken to be specially taxed under the act for benefits to his property, which, it is contended under the decision in *Beveridge* v. *Lewis,* 137 Cal. 619, [92 Am. St. Rep. 188, 67 Pac. 1040, 70 Pac. 1083], could not, under proceedings in eminent domain, be allowed as an offset in determining the compensation to be paid. And, generally,

it is claimed that the act is in violation of section 14 of article I of our constitution, against taking private property for public use without just compensation, and the legislation thereunder.

While we have set forth the main claims of counsel on this latter point, we perceive no reason why we should discuss them. They are all based upon the assumption that the act in question, as far as its provisions pertain to the assessment of the lands in the district for special benefits, are in the nature of taking the property of plaintiffs for public use, or, at least, that all the provisions of the act on that subject are referable to the exercise of the power of eminent domain. Of course, if this assumption is wrong, and the exercise of the power of eminent domain is not at all involved in proceedings under the act, the attack upon it, based on that assumption, falls. And that the proceedings authorized by the act have no relation to the exercise of this right of eminent domain at all, is, under the authorities, quite clear. The act is not in any respect an eminent domain act, nor does it contain any of its features, and, as far as it provides (which as to the lands of plaintiff and others in the district is all it does) for an assessment for benefits against the lands embraced within the exterior limits of the district declared by the municipal authorities to be benefited by the contemplated street improvement, the right of eminent domain is not being exercised at all; there is no taking of the lands, assessed under the act for special benefits, in either a general or constitutional sense. Under our constitution, private property may be taken for public use, either by the exercise of the right of eminent domain or by taxation. These are sovereign powers which are separate and distinct from each other, and the power which is conferred upon municipalities under the proceedings authorized by the act in question, as far as assessing the lands for special benefits are concerned, are referable solely to the exercise by the state of its sovereign power of taxation conferred upon municipalites as its governmental agents. As said by Dillon, in his work on Municipal Corporations, 4th ed., sec. 617: "The compulsory acquisition of property for streets or other public purposes, involves the exercise of two different and high prerogative or sovereign powers,—namely, that of eminent domain, so called, by which the property is

taken, and that of taxation (which includes assessments upon the property specially benefited, or perhaps upon such as is legislatively deemed to be thus benefited), by which compensation is made to those whose property has been thus appropriated." Within the declaration of that authority, the power which has been conferred upon the municipality under this act,—namely, to assess for special benefits, is the power of taxation; power to assess the lands within the district for those special benefits which they will receive above the benefits which may result to the community generally through such improvement; authority from the legislature to create a district, which, in the judgment of the municipal authorities, will be specially benefited by the opening or widening of a street or other public improvement contemplated by the act. The theory upon which such legislation is enacted is that the lands in the vicinity of a public improvement, and which are specially benefited by it, should pay the expenses of the making of the improvement, in proportion to the benefits received therefrom. This is all that the act contemplates and provides for. No property of those within the district created to pay for the benefits conferred is taken. Such owners are taxed in proportion to benefits to create a fund to be paid the owner for the land which is actually taken for the street and the damages and costs of the improvement. Should the owner refuse to take the amount awarded him by the commissioners, then, as the act provides, proceedings under the law relative to the exercise of the right of eminent domain must be brought against him to condemn his land. This, however, is the only occasion when the law of eminent domain has any application under the act, and does not concern the owners of land assessed for special benefits. As to them, the state, through its public agency—the municipality—is exercising the right of taxation and not eminent domain. The act in question contemplates the exercise of both powers; eminent domain as against the owner of the land to be taken for the improvement if he does not agree to take the award made by the commissioners, and taxation of the owners of land in the district, who are specially benefited by the improvement, to pay for the land taken and the expenses of making the improvement. Having pointed out the distinction in the constitutional powers provided to be exercised under the act, it is only necessary to say that it is

generally agreed among the authorities, and in this state distinctly decided, that the legislature has the right, under the power of taxation, to confer upon municipalities the authority to require local improvements, such as the laying out or widening of streets, to be borne by those owning property in the vicinity of the improvement, and who are specially benefited by reason of it; that this is a legitimate exercise of the taxing power which the legislature may confer upon municipalities in making local improvements, and does not contravene the constitutional provision respecting the exercise of eminent domain.

*Emery* v. *San Francisco Gas Co.,* 28 Cal. 345; *Hagar* v. *Supervisors Yolo County,* 47 Cal. 222; *Hornung* v. *McCarthy,* 126 Cal. 17, [58 Pac. 303]; *Duncan* v. *Ramish,* 142 Cal. 686, [76 Pac. 661]. See, also, *French* v. *Barber Asphalt Pav. Co.,* 181 U. S. 324, [21 Sup. Ct. 625], and *People* v. *Mayor of Brooklyn,* 4 N. Y. 419, [55 Am. Dec. 266], where these matters are exhaustively discussed.)

It is apparent, therefore, that an act which confers authority upon municipalities to tax for local improvements cannot be said to be local or special when compared with legislation providing for the exercise of the right of eminent domain, where the act has no relation to the exercise of such latter power, but applies to and is justified under the exercise of an entirely different and distinct power—that of taxation.

It would also appear from a reading of the opinion in *Davies* v. *Los Angeles,* 86 Cal. 48, [24 Pac. 771], that the same points just considered were urged on that appeal, or, at least, objections against the validity of the act on substantially the same grounds were made, and, while not extensively discussed by the court, were considered and decided to be untenable.

Under these views and authorities cited there can be no merit in the claim that plaintiffs by the provision of the act are denied equal protection of the law as is guaranteed by amendment XIV of the federal constitution. There is nothing in the case of *Norwood* v. *Baker,* 172 U. S. 269, [19 Sup. Ct. 187], relied on by appellants, which holds that the assessment of lands in a district for special benefits in the opening and improvement of streets by a municipality is invalid because in contravention of any provisions of the federal constitution. That it decides nothing of the kind is pointed out in *French* v. *Barker Asphalt Co.,* 181 U. S. 324, [21 Sup. Ct. 625], and

CLVII Cal.—6

*Wight* v. *Davidson,* 181 U. S. 371, [21 Sup. Ct. 616].    See, also, *Duncan* v. *Ramish,* 142 Cal. 686; [76 Pac. 661].

As to the other points made by appellants.    There is nothing in the claim that the act of 1889 was repealed by the subsequent act of 1903 on the same subject of opening and laying out streets.    A sufficient answer to this claim is that the act of 1903 simply provides an alternative method of proceedings for opening and laying out streets, etc., and expressly provides by section 35 thereof that its provisions shall in no way affect the act of 1889.    The point that the act in question was repealed by the enactment in 1907 of amendments to the Code of Civil Procedure relative to eminent domain, requires no discussion, in view of the fact that the act, being one providing for taxation for special benefits as far as the lands within the district are concerned, has nothing to do with eminent domain.

As the demurrer was properly sustained, the application for a preliminary injunction was properly denied.

The judgment and order appealed from are affirmed.

Melvin, J., and Henshaw, J., concurred.

Hearing in Bank denied.